IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN DILLOW, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STACY L. GARRITTY, in her official capacity as the Treasurer of the Commonwealth of Pennsylvania, <br><br> Defendant. | CIVIL ACTION <br><br> No. _____ |

**CLASS ACTION COMPLAINT**

Plaintiff Brian Dillow ("Plaintiff"), individually and on behalf of a Class of persons, as defined below, for this Class Action Complaint (the "Complaint") against Defendant Stacy L. Garrity, Treasurer of the Commonwealth of Pennsylvania (the "Treasurer" or "Defendant"), in her official capacity, states as follows:

**INTRODUCTION**

1. Plaintiff brings this action challenging the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution of the provision of the Pennsylvania's Disposition of Abandoned and Unclaimed Property Act (the "Act"), which requires the Commonwealth to take for public use, without just compensation, private property that the Commonwealth classifies as "presumed abandoned" pursuant to the provisions of the Act. This action also challenges the Act under the Takings Clause of Article I, Section 10 of the Pennsylvania Constitution. Count I of the Complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and under the United States Constitution on behalf of all current owners of unclaimed property held by the Treasurer in

the form of money. Count II seeks identical relief under Section 1983 and the Pennsylvania Constitution.

2.  The Act applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Under the Act such property is "presumed abandoned" if the owner, as defined in the Act, has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within certain time limits provided in the Act. Property that is "presumed abandoned" must be delivered to Defendant's custody.

3.  The Takings Clause of the Fifth Amendment to the United States Constitution (the "5th Amendment") prohibits the government from using private property and for public purposes without compensation to the property owner: "nor shall private property be taken for public use, without just compensation."

4.  The Takings Clause of Article I, Section 10 of the Pennsylvania Constitution ("Article I, Section 10") contains a similar proscription: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

5.  Nevertheless, under the Act "presumed abandoned" property, proceeds from any sale of any such property that was not in cash form when it was taken into state custody, and earnings on any such property and all cash delivered as presumed abandoned to the Defendant, are all used to fund state programs or operations until claimed by an "owner" of the property. An owner may reclaim property from the Commonwealth; however, the Act provides that an owner who files a valid claim is entitled only to the property turned over to the Commonwealth by the holder (or the proceeds from the sale of that property) and not to

any interest or dividends or other increments that accrue on the property after delivery to the Commonwealth, or to the payment of just compensation to an owner of presumed abandoned property held in the form of cash that the Commonwealth puts to public use while in custody.

6. In the case of dividend-bearing securities, the owner is entitled to any dividends that accrue prior to sale of the security, but with respect to all other presumed abandoned property the Act does not provide for compensation to any owner for the Commonwealth's taking of these fruits of the property and the use of that property to fund Commonwealth obligations during the period it is in the Commonwealth's custody.

7. Accordingly, the Act effectively provides the Commonwealth with an interest-free loan of unclaimed private property funds that the Act directs to be co-mingled with the Commonwealth's General Fund while in the Treasurer's custody, without providing any just compensation to claiming property owners for the state's use of those private property funds while in the Treasurer's custody.

8. The Commonwealth currently holds more than $3.5 billion in unclaimed property funds, and it uses that unclaimed property freely to fund Commonwealth obligations. The Commonwealth otherwise pays market rates to borrow money.

9. The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017), held that Illinois' unclaimed property act -- which, like Pennsylvania's, provided the state with use of unclaimed property without payment of just compensation to claiming property owners -- violated the 5th Amendment's Takings Clause, as made applicable to Illinois and the other states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "14th Amendment"). The Seventh Circuit

concluded the Illinois act denied property owners just compensation for the benefit of the property's use while in state custody. The Seventh Circuit has also held that the state's obligation to pay just compensation for the public use of unclaimed private property does not depend on whether the property earned interest before it was delivered to the state treasurer.

10. In this Complaint, Plaintiff seeks a declaration that the Pennsylvania Act, in providing for the Commonwealth's confiscation of the interest and other earnings on unclaimed property and its beneficial use of the property while in Commonwealth custody to fund Commonwealth obligations without any compensation, effects a taking for which Plaintiff and the Class are entitled to just compensation under the 5th Amendment and Article I, Section 10. Plaintiff also seeks an injunction to implement that declaration and the payment of just compensation to those whose property has been returned since the date of this Complaint's filing.

11. While this Court has previously held that the Commonwealth's mere custody of unclaimed property under the Act did not warrant the payment of interest to property claimants, this Court, unlike the Seventh Circuit in *Kolton*, has not addressed whether the Commonwealth's *use* of unclaimed property *for public purposes* while in the Commonwealth's custody constitutes a taking for public use requiring the payment of just compensation under the 5th Amendment.

12. The Seventh Circuit's *Kolton* decision has compelling reasoning and results that are entirely consistent with the existing law of the Third Circuit. This Court should follow the Seventh Circuit's reasoning and conclusions and apply the Court of Appeals' rationale to the Pennsylvania Act. Thus, this Court should conclude that, like Illinois' counterpart, Pennsylvania's unclaimed property act's provisions permitting the public use of

4

unclaimed private property without payment to the owners of the private property constitutes an unlawful taking without just compensation under the 5th Amendment. The Court should reach the same conclusion under Article I, Section 10, which courts have interpreted to provide protections coextensive with the 5th Amendment's Takings Clause.

## PARTIES

13. Plaintiff Brian Dillow is and has been at all relevant times a citizen and resident of Chester County, Pennsylvania. Plaintiff is an "owner" of property, as defined in 72 P.S. §1301.1, that is currently held in custody pursuant to the Act by Defendant.

14. Defendant Stacy L. Garrity is the Treasurer of the Commonwealth of Pennsylvania. In that position, pursuant to the Act, Defendant, or any predecessor or successor in that position, is and has been in charge of supervising and administering the Act. Plaintiff sues Defendant Garrity in her official capacity. In that capacity, she resides in this District and is subject to suit in this District. Specifically, the Treasurer maintains a primary office in Philadelphia, Pennsylvania, at which it directs holders of unclaimed property to remit all unclaimed property to the Commonwealth's custody and file related reports with the Commonwealth regarding unclaimed property in the holder's possession. The Treasurer's alternative by-mail method for holders to deliver such reports and unclaimed property to the Commonwealth is a single post office box, also located in Philadelphia.

## JURISDICTION AND VENUE

15. The claims in this Complaint arise under the 5th and 14th Amendments to the United States Constitution, Article I, Section 10 of the Pennsylvania Constitution, and under 42 U.S.C. § 1983. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331,

5

28 U.S.C. § 1343 and 28 U.S.C. § 1367(a). In addition, Count I of this Complaint involves a claim for a Declaratory Judgment under 28 U.S.C. § 2201, et seq.

16. Venue is proper in this District because Defendant is deemed to reside in and is subject to suit in this District, and because a substantial portion of the events that underlie the claims asserted here occurred in this District.

## STATEMENT OF FACTS

### The Act and Its Operation

17. The Act contains many provisions modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission. The Pennsylvania Act, as alleged above, provides that private property is "presumed abandoned" if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. 72 P.S. §§1301.2-1301.11. The purpose of the Act is twofold: first, to reunite owners with their property, and second, to allow the Commonwealth rather than the holder to use the property before it is reunited with its owner.

18. Once a holder determines property in its possession is "presumed abandoned" within the meaning of the Act, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the Treasurer. 72 P.S. §§1301.2-1301.10, 1301.13. If the property is not cash, securities or negotiable instruments, Defendant is permitted to sell the property within a reasonable time to the highest bidder at a public sale. 72 P.S. §1301.17. Defendant "shall be required to sell all stocks, bonds and other negotiable financial instruments upon receipt of such items." *Id*. The unclaimed property and proceeds from the sale of unclaimed property are to be held in

custody for the owner, who can reclaim the property from the Commonwealth at any time, but without payment of any compensation for the state's use of that property for the property's time in the Treasurer's custody. 72 P.S. §1301.20.

19. The Act directs the Treasurer to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the Commonwealth's General Fund, except for mandatory deposits to a "separate trust fund" containing a sum "not exceeding" $25,000 "plus twenty per centum of deposits and sums [representing unclaimed property] paid to the State Treasurer…during the preceding twelve (12) months," from which the Treasurer shall pay owner claims. 72 P.S. §1301.18(a).

20. The only exception is for unclaimed restitution awards, 95% of the total amount of which is annually deposited in the Commonwealth's Crime Victim's Compensation Fund and 5% of which is deposited into a Rightful Owners' Fund from which owner claims are paid, with any money in the Rightful Owners' Fund left over 12 months after the annual deposit transferred to the Crime Victim's Compensation Fund. 72 P.S. §1301.18(a.1). Accordingly, unclaimed restitution awards are put to specific public uses and are not simply co-mingled with the Commonwealth's General Fund.

21. The Treasurer acknowledges that the Commonwealth "is actively seeking the owners of more than $3.5 billion of unclaimed property," and that "Treasury receives hundreds of millions of dollars in unclaimed property every year."

22. Under the Act, accordingly, approximately 80% of unclaimed property transferred to Philadelphia into the custody of Defendant and the Commonwealth pursuant to the Act is invested alongside the Commonwealth's General Fund, and thus earns interest, dividends or other accruals and/or is held in interest-bearing accounts or other investment

instruments.  By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the Commonwealth's General Fund.  Money in the Crime Victim's Compensation Fund is invested like other Commonwealth funds, with the investment gains and proceeds inuring to the sole benefit of the Crime Victim's Compensation Fund, and is not credited toward an unclaimed restitution award.

23. Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the Commonwealth after certain due process procedures are followed, the Act is purely custodial in nature, as Pennsylvania courts have determined, and title to abandoned property is never transferred from the owner to the Commonwealth of Pennsylvania. Thus, title and ownership at all times remain with the original owner of the property.

24. The Treasurer neither compensates an owner of unclaimed property for lost interest, dividends, or other earnings or accruals on the property after deposit with the Defendant but prior to sale, or the loss of the beneficial use of property, while it is in Commonwealth custody, nor pays just compensation to any owner for the state's use of the private unclaimed property while in state custody.

25. Moreover, as Pennsylvania courts have determined, the Act does not allow owners of unclaimed property to receive interest, dividends or other income or increments on any property that is liquidated or is a cash account while it is being used by the Commonwealth as custodian, regardless of the nature of the property.

26. In *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir.2017), the U.S. Court of Appeals for the Seventh Circuit considered a 5th Amendment challenge to Illinois' unclaimed property statute, which, like Pennsylvania's, paid no compensation to property owners for

the state's use of unclaimed property while in the state's custody. The Court, through Judge Easterbrook, reasoned:

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216,235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L.Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be.

*Id.* at 533.

27.     The essential features of the Illinois unclaimed property act are identical to Pennsylvania's. The Illinois act allowed for no payment to property owners for the state's use of the owner's property while in the state's custody. Here, too, the Pennsylvania Act does not allow for the payment of compensation to property owners for the Commonwealth's use of unclaimed property for public purposes while the property is in the Commonwealth's custody pursuant to the Act. *Smolow v. Hafer*, 959 A.2d 298 (Pa. 2008). Rather, Pennsylvania law requires that earnings on unclaimed property while in state custody inure to the sole benefit of the Commonwealth's General Fund or Crime Victim's Fund, as applicable.

**Plaintiff's Property**

28.     According to the Defendant's online records, Defendant holds Mr. Dillow's property in custody. That property includes two items of unclaimed property totaling more than $100, which the Commonwealth's database identifies as a "Claims Payment Check" and a "Bank Draft." Mr. Dillow is the owner under the Act with respect to that property.

9

Defendant has at all times since delivery held Mr. Dillow's property in custody subject to its being claimed by or on behalf of Mr. Dillow.

29. While the Defendant held Mr. Dillow's property in custody, pursuant to the Act, the Commonwealth converted the two items of Mr. Dillow's property into cash and has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the Commonwealth's operations and programs.

30. Under the Act as interpreted by the Courts of Pennsylvania, should Plaintiff claim his property, Defendant will pay Plaintiff a cash payment equal to the total sum of the amounts stated on the Claims Payment Check and Bank Draft, but will not pay any just compensation to Plaintiff for the Commonwealth's use of that property during the period of custody.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and prospective injunctive relief on behalf of the following class (the "Class"):

> All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of unclaimed property being held in custody by the Treasurer of the Commonwealth of Pennsylvania in the form of money under the Pennsylvania Disposition of Abandoned and Unclaimed Property Act, 72 P.S. §§1301.1-1301.29b.

32. The members of the Class are so numerous that joinder of all members is impracticable. There are currently hundreds of thousands of persons or entities who own property presumed abandoned and held in custody by Defendant under the Act. Currently the Treasurer is holding more than $3.5 billion in unclaimed property in custody, with hundreds of millions of dollars of additional unclaimed property flowing to the

Commonwealth annually. The average amount of each claim is too small to warrant an individual action challenging the Act's legality under the United States Constitution and the Pennsylvania Constitution, making joinder of all class members impracticable.

33. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff's property is being held in custody under the Act by Defendant and, while in Commonwealth custody, is subject to the same provisions of the Act that prohibit the Commonwealth from compensating other owners of unclaimed property for interest or earnings received after deposit with the Defendant and prior to sale of the property or for use by the defendant of all monies held as unclaimed property.

34. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action litigation.

35. There are questions of law and fact common to the Rule 23(b)(2) Class, including the following:

   a. whether the Commonwealth's use of, and retention of interest, dividends and other earnings or accruals on, unclaimed property for public purposes is a taking for which just compensation is due;

   b. whether the Commonwealth's use of unclaimed property in its custody for public purposes is a taking for which just compensation is due;

   c. the proper measure of just compensation for the Class;

   d. the amount of interest, earnings and benefit realized by the Commonwealth from the use of the Class' unclaimed property; and

   e. the appropriate injunctive and declaratory relief for the Rule 23(b)(2) Class.

36. Plaintiff's claims arise out of the same common course of conduct by Defendant giving rise to the claims of the other members of the Rule 23(b)(2) Class. Defendant has acted and refused to act on grounds that apply generally to the Rule 23(b)(2) Class so that injunctive and declaratory relief are appropriate.

37. The Fifth Amendment to the United States Constitution protects not only the principal of unclaimed property in the custody of the Commonwealth, but also the time-value of the property (that is, earnings on the owner's money). Accordingly, upon return of their unclaimed property, Plaintiff and the members of the Rule 23(b)(2) Class are entitled to just compensation for the Commonwealth's use of their property in violation of the 5th Amendment and the analogous Article I, Section 10.  The Commonwealth is not entitled to free use of unclaimed property.

38. While the amount of just compensation will depend on the circumstances, the measure of just compensation should be based on the benefit to the Commonwealth conferred from its beneficial use of the property.  In all events, the Commonwealth is not entitled to transform unclaimed private property into an interest-free loan for the Commonwealth's benefit.  Elsewhere, the Commonwealth provides that compensation for delayed payments for condemnations "shall be paid at an annual rate equal to the prime rate as listed in the first edition of the Wall Street Journal published in the year, plus 1%, not compounded" from the date of condemnation or the relinquishment of the condemned property.  26 Pa.C.S.A. §713(a).

## COUNT I
## CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF ON BEHALF OF PLAINTIFF AND THE CLASS; <u>UNCONSTITUTIONALITY UNDER 5TH AMENDMENT</u>

39.     Plaintiff Dillow realleges each of the foregoing paragraphs as though fully set forth herein.

40.     The Act violates the 5th Amendment, made applicable to the Commonwealth through the 14th Amendment, in that it directs that unclaimed property transferred to the custody of the Commonwealth must be used by the Commonwealth for public purposes without the payment of just compensation to property owners, upon claiming the property, for the Commonwealth's public use of that property while in state custody.

41.     Plaintiff and the Class are entitled to a declaration that the Act violates the 5th Amendment and 14th Amendment.

42.     The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

43.     Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et seq.*

## COUNT II
### CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF ON BEHALF OF PLAINTIFF AND THE CLASS; <u>UNCONSTITUTIONALITY UNDER ARTICLE I, SECTION 10</u>

44.     Plaintiff Dillow realleges each of the foregoing paragraphs as though fully set forth herein.

45.     The Act violates Article I, Section 10 in that it directs that unclaimed property transferred to the custody of the Commonwealth must be used by the Commonwealth for public

purposes without the payment of just compensation to property owners, upon claiming the property, for the Commonwealth's public use of that property while in state custody

46. Plaintiff and the Class are entitled to a declaration that the Act violates Article I, Section 10.

47. The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

48. Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et seq*.

**WHEREFORE,** Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

A. Declaring that this action may be maintained as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above and that Plaintiff Dillow is a proper Class representative, certifying the Class and designating his counsel as Class Counsel;

B. Declaring the Act is unconstitutional under the 5th and 14th Amendments to the United States Constitution;

C. Declaring that the Commonwealth's confiscation of interest, dividends, earnings, or other benefits of the property delivered to the Commonwealth under the Act and the Commonwealth's use of unclaimed private property for public purposes while in the

Commonwealth's custody are takings of property within the meaning of the 5th Amendment and Article I, Section 10, for which the Commonwealth is required to pay just compensation;

  D. Enjoining Defendants from withholding interest, dividends, accruals, earnings, investment returns, and other benefits earned on and from unclaimed property when paying just compensation to the owners of the property;

  E. Declaring that the proper measure of just compensation is the value of the property taken and returned to the owner, taking into account the value of money to the Commonwealth of the benefit of the use of the property;

  F. Declaring the standard for Plaintiff and the members of the Class for measuring the just compensation to the owner for the use of the property taken;

  G. Declaring that Defendant must pay just compensation according to the standard determined by this Court, and issuing an injunction to ensure that the Commonwealth complies with that Declaration when returning property to owners of unclaimed property;

  H. Awarding Plaintiff his attorneys' fees and reimbursement of their expenses, pursuant to 42 U.S.C. § 1988 and pursuant to applicable principles of equity; and

  I. Awarding such other and further relief as the Court deems just and proper.

Dated: May 12, 2022

                 **SMITH, KATZENSTEIN & JENKINS LLP**

                 /s/ *Michael C. Wagner*

**OF COUNSEL:**         Michael C. Wagner (PA No. 78756)
                 Julie M. O'Dell (PA No. 320081)
**THE LAW OFFICE OF ARTHUR SUSMAN** 1000 N. West Street, Suite 1501
Arthur Susman          Wilmington, Delaware 19801
1540 N. Lake Shore Drive      (302) 652-8400
Chicago, Illinois 60610       mcw@skjlaw.com
(847) 800-2351          jmo@skjlaw.com

                 *Attorneys for Plaintiff*