IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN DILLOW | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 22-1852 |
| STACY L. GARITY | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                        **May 3, 2024**

      Plaintiff, Brian Dillow, has filed a class action suit against Defendant, Stacy L. Garity, in her official capacity as the Treasurer of the Commonwealth of Pennsylvania.  Defendant has moved to dismiss.  Dillow alleges that Pennsylvania's Disposition of Abandoned and Unclaimed Property Act ("DAUPA") violates the Takings Clause of the Fifth Amendment of the U.S. Constitution as well as Article I, Section 10 of the Pennsylvania Constitution.  Under DAUPA, the State Treasurer takes custody of certain property deemed "abandoned and unclaimed."  The owner of that property may make a claim for its return or for the proceeds of any sale of the property.  Dillow specifically alleges that the act does not provide for just compensation because it does not require the Treasurer to pay interest to property owners for the time the property, or its cash proceeds, are held by the Commonwealth.  However, the Third Circuit, the Pennsylvania Supreme Court, and courts around the country have rejected this argument with regard to Pennsylvania's act and equivalent acts in other states.  We agree with the holdings of these courts.  Accordingly, we will grant Defendant's Motion to Dismiss.

I.      **BACKGROUND**

Every state has laws governing the disposition of unclaimed property.  *See* Cassie B. Arntsen, *Who Stole My Bitcoin?! A Look Into the Problems Associated with State Custodial Taking of Unclaimed Crypto Currencies*, 106 Iowa L. Rev. 1923, 1925, 1926 (2021).  "The purpose of unclaimed property laws is to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner."  *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 669 F.3d 359, 365 (3d Cir. 2012).  While technically applicable to all property, whether real or personal, tangible or intangible, *see* 72 Pa. Cons. Stat. § 1301.1; Arnsten, *supra*, at 1925, 1926, unclaimed property laws generally operate to dispose of unclaimed or unused financial assets, such as uncashed checks, insurance policy proceeds, stock certificates, and bank accounts, rather than physical personal property or land, *see Origins and Development of Modern Escheat*, 61 Colum. L. Rev. 1319, 1332 (1961); Uniform Law Commission, *Revised Uniform Unclaimed Property Act (RUUPA)*, YouTube (Jul. 9, 2019), https://www.youtube.com/watch?v=u1oUY00360I.  The purpose of these laws is to safeguard abandoned property for the owner, free the holders of the property from the legal obligations of protection and upkeep of the property, and ensure that the public, rather than private holders, benefits from the property until it is returned to the owner.  Arnsten, *supra*, at 1930.  Today, forty-four states have enacted some form of the Uniform Law Commission's Uniform Unclaimed Property Act and its revisions and forty-nine states have enacted comprehensive unclaimed property legislation.  *Id.* at 1933 & n.87.

Pennsylvania's unclaimed property act, DAUPA, 72 Pa. Cons. Stat. § 1301.1 *et. seq.*, is at issue in this case.  Under DAUPA, property is deemed "abandoned and unclaimed" under different, specifically defined circumstances depending on the nature of the property.  72 Pa.

Cons. Stat. §§ 1301.2–1301.10.  For example and as relevant here, for written financial instruments, such as checks and bank drafts, to be deemed abandoned and unclaimed, they must be outstanding and uncashed for more than three years from the payable date of the instrument, and the owner must have failed to have written to the financial institution concerning the property or have otherwise indicated an interest in it.  *Id.* at § 1301.3(3).  Once presumed abandoned, the holder of the property (if worth $50 or more) is required to attempt to notify the owner so that the owner may claim it.  *Id.* at § 1301.10(a).  If the holder is unsuccessful in contacting the owner, the holder is required to deliver the property to the State Treasurer to be held in her custody.  *Id.* at §§ 1301.2, 1301.13.  The Treasurer may, and for certain property must, sell the property and convert it to cash.  *Id.* at §§ 1301.17.  Proceeds from a sale of property, with the exception of certain restitution awards, are deposited by the Treasurer into the Commonwealth's General Fund.  *Id.* at §§ 1301.9(6), 1301.18.  Any person claiming an interest in the property may file a claim with the Treasurer for return of the property or the proceeds of any sale of the property.  *Id.* at § 1301.19.  Furthermore, the owner is entitled to any income or other increments received by the Treasurer on the property while in her possession.  *Id.* at § 1301.15.  However, the owner is not entitled to any payment of interest under the act.  *Simon v. Weissmann*, 301 F. App'x 107, 110 (3d Cir. 2008).

      Plaintiff alleges that he is the owner of property currently held by the Defendant Treasurer.  (Compl., ECF No. 1, ¶¶ 13, 14.)  Specifically, he alleges that, according to Treasury's online records, Defendant obtained two items of Plaintiff's unclaimed property pursuant to DAUPA, a "Claims Payment Check" and a "Bank Draft," worth a total of more than $100.  (*Id.*, ¶28.)  He further alleges that Defendant has converted these items into cash to be used by the

3

Commonwealth for public purposes. (*Id.*, ¶ 29.) Plaintiff has not yet made a claim for his property. (*See id.* at ¶ 30.)

Plaintiff brings this case as a putative class action pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 23 on behalf of "[a]ll persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of unclaimed property being held in custody by the Treasurer of the Commonwealth of Pennsylvania in the form of money under the Pennsylvania Disposition of Abandoned and Unclaimed Property Act." (*Id.*, ¶¶ 1, 31.) He argues that because under DAUPA, the Commonwealth is not required to pay property owners interest on the value of their property while in its custody, the act violates the Fifth Amendment's Takings Clause, as applied to the states by the Fourteenth Amendment, and Article I, Section 10 of the Pennsylvania Constitution.[1] (*Id.*, ¶¶ 10, 40, 45.) Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 as well as a prospective injunction to ensure that Defendant pays interest on property returned under DAUPA. (*Id.*, ¶¶ 41–43, 46–48; *see also id.* at 14–15, ¶¶ B–G.) Defendant has moved to dismiss Defendant's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* MTD, ECF No. 6, at 2 (PDF pagination).)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Plaintiff brings his state-law claim under the Pennsylvania Constitution pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). (Compl., ¶ 15.) He brings his federal claims pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331 and our jurisdiction over actions to redress deprivations of constitutional rights under 28 U.S.C. § 1343. (*Id.*)

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must accept as true all factual allegations, it need not accept legal conclusions. *Id.*

### III. DISCUSSION

Under the Takings Clause of the Fifth Amendment, "private property [may not] be taken for public use, without just compensation." U.S. Const. amend. V. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). While, like the other amendments in the Bill of Rights, this clause originally only constrained the federal government, it was later applied to the states by way of the Fourteenth Amendment. *See Chicago Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 238–39 (1897). Article I, Section 10 of the Pennsylvania Constitution is substantially identical to the Takings Clause, providing that "private property [shall not] be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const art. I, § 10. The Pennsylvania Supreme Court "has applied the federal constitutional takings jurisprudence embodied in the decisions of the United States Supreme Court when considering takings issues under the Pennsylvania Constitution." *Smolow v. Hafer*, 959 A.2d 298, 300 n.6 (Pa. 2008).

Defendant's retaining custody of abandoned property under DAUPA is not a taking that requires compensation. It is well established that "the common law doctrine of *bona vacantia* [i.e. escheat] allows states to take control and dispose of abandoned property." *Simon*, 301 F. App'x at 110 (citing *Delaware v. New York*, 507 U.S. 490, 497 (1993)). In *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the Supreme Court considered a Takings Clause challenge to an Indiana law that provided for the reversion of mineral rights to the surface property owner after

twenty years of nonuse by the mineral rights owner. *Texaco*, 454 U.S. at 518. In upholding the law, the Court held:

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. . . . It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation.

*Id.* at 530.

In 2008, two appellate courts applied *Texaco* and upheld the constitutionality of DAUPA against takings challenges. In *Simon*, the Third Circuit rejected a constitutional challenge to DAUPA similar to the one presented here.[2] 301 F. App'x at 108–09, 112. As the court explained, "Just as in *Texaco*, where the owner's failure to use the mineral rights within a certain, statutorily-defined period caused abandonment of those rights, the plaintiffs here let their property interest lapse after the time prescribed by DAUPA. Thus, under the rationale of *Texaco*, the Commonwealth of Pennsylvania has no obligation to pay interest on property which plaintiffs abandoned." *Simon*, 301 F. App'x at 112. In *Smolow*, the Pennsylvania Supreme Court reached the same conclusion under Article I, Section 10 of the Pennsylvania Constitution. The Court held that "owners of presumptively abandoned property have no claim to the interest earned while the abandoned property is held in perpetual temporary custody of the state" because "[t]he DAUPA procedures result not from a taking by overt act of the Commonwealth, but are

---

[2] Though unpublished and thus not binding on this court as controlling authority, we rely on *Simon* as persuasive authority. *See United States v. Kousisis*, No. CR 18-130, 2019 WL 4126484, at *12 (E.D. Pa. June 17, 2019).

triggered by the neglect of the owner." *Smolow*, 598 A.2d at 304 (citing *Texaco*, 454 U.S. at 530).³

Plaintiff argues that *Simon* and *Smolow* do not apply here. In particular, he contends that "[w]hile the *Smolow* and *Simon* courts held that the Takings Clause is not implicated by the Commonwealth's *mere custody* of unclaimed property under the Act, there was no argument asserted in those cases that the Commonwealth's *use of the unclaimed property while in the Commonwealth's custody* required just compensation under the Takings Clause." (Opp., ECF No. 10, at 14 (emphasis in original).) However, as Defendant points out, both courts explicitly considered Pennsylvania's use of property under DAUPA while in the Commonwealth's custody. (*See* Reply, ECF No. 11, at 4–5.) *See also Smolow*, 959 A.2d at 302 ("Smolow contends that the concept of just compensation under Article 1, Section 10 requires not only return of the principal property, but also interest, earnings, or other accruals on the property while held in the state's custody subject to utilization for public purposes."); *Simon*, 301 F. App'x at 109 (discussing *Smolow* and observing that "[t]he Commonwealth refused to pay Smolow any of the interest earned by the Commonwealth on the proceeds of the stock sale"). Regardless, the critical point is that whatever use the Commonwealth makes of property held under DAUPA, this property was abandoned and its placement in the Commonwealth's custody is not a taking requiring compensation.

*Simon* and *Smolow* are consistent with the holdings of courts across the country considering similar constitutional challenges to other state unclaimed property statutes.

---

³ While the Pennsylvania Supreme Court applies federal constitutional takings jurisprudence when evaluating claims under Article I, Section 10 of the Pennsylvania Constitution, *see Smolow*, 959 A.2d at 300 n.6, its holding in *Smolow* was based on an interpretation of the state constitution and we are bound to follow it. *See Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 44 (2018).

*See, e.g.*, *Cote v. Off. of California State Controller*, No. 23-15375, 2024 WL 1108546 (9th Cir. Mar. 14, 2024) (denying a claim that "California's Unclaimed Property Law is unconstitutional because it does not require interest to be paid on escheated property while held by the state nor once reclaimed"); *Dani v. Miller*, 374 P.3d 779, 794 (Okla. 2016) (upholding the Uniform Unclaimed Property Act against a Takings Clause challenge and noting that "[u]nlike the Indiana statute examined in *Texaco, Inc.,* the UUPA does not extinguish the rights of owners of abandoned property"); *Rowlette v. State*, 656 S.E.2d 619, 723 (N.C. App. 2008) ("Due to this unique nature of the property, and since it is the owner's neglect that results in the State's possession of the property, the capture of interest accruing on that property by the State is not a taking, and the State is not required to pay the owner 'just compensation.'"); *Clark v. Strayhorn*, 184 S.W.3d 906, 914 (Tex. App. 2006) ("Once the property is presumed abandoned, the State's lawful use of that property for its own benefit cannot be an unconstitutional taking." (citing *Texaco*, 454 U.S. at 530)); *Smyth v. Carter*, 845 N.E.2d 219, 224 (Ind. Ct. App. 2006) ("Failure to exercise those [property] rights results in a presumption of abandonment and a custodial escheat that deprives the owner of some of the incidents of ownership. Because it is the owner's failure to act, and not the State's exercise of its sovereign power, that causes the deprivation, there is no "taking" that requires compensation."); *see also Simon* 301 F. App'x at 113 (collecting cases).

Plaintiff points to three cases that came to the opposite conclusion. (*See* Opp. at 11–14). We do not find these cases convincing. In the first, *Sogg v. Zurz*, 905 N.E.2d 187 (Ohio 2009), the Ohio Supreme Court considered a takings challenge under the Fifth Amendment and the Ohio Constitution to the non-payment of interest on property

8

returned under Ohio's Unclaimed Funds Act. *Sogg*, 905 N.E.2d at 189–90. However, the Court explicitly distinguished that state's act from DAUPA, noting that the "UFA does not contain a presumption of *abandonment* as do the statutes at issue in Indiana, Louisiana, and *Pennsylvania*." *Id.* at 190–91 (emphasis added).

In the other two cases, *Cerajeski v. Zoeller*, 735 F.3d 577, 578 (7th Cir. 2013) and *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017), the Seventh Circuit considered Takings Clause challenges to the unclaimed property statutes of Indiana and Illinois. The court in *Cerajeski* held that it was an unconstitutional taking for Indiana not to pay interest on abandoned property claimed under its statute. 735 F.3d at 580. In *Kolton*, the Seventh Circuit noted that *Cerajeski*'s holding would appear to extend to Illinois's law, overturned the district court's dismissal of the case on jurisdictional grounds, and remanded for further consideration in light of *Cerajeski*. 869 F.3d at 533–36. However, while the *Cerajeski* court acknowledged that "[t]he state can 'condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest,'" 735 F.3d at 583 (quoting *Texaco*, 454 U.S. at 526), it did not acknowledge *Texaco*'s core holding that a state's control over abandoned property is not a taking that requires compensation under the Fifth Amendment. Notably, neither does Plaintiff. (*See generally* Opp.)

Instead, Plaintiff focuses on two cases cited by the *Cerajeski* court. (*Id.* at 12.) First, Plaintiff notes the *Cerajeski* court's citation of *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980) for the proposition that "[a] state may not 'transform private property into public property without compensation' merely 'because it is held temporarily by the [state].'" *Cerajeski*, 735 F.3d at 582 (quoting *Webb's*, 449 U.S. at

164). Plaintiff also highlights the court's reference to *Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998). In the words of the court, "[i]n *Phillips*, the Supreme Court reaffirmed its commitment to the 'interest follows principal' rule as a constitutionally relevant aspect of Takings Clause jurisprudence."[4] *Cerajeski*, 735 F.3d at 582 (citing *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1199 (9th Cir. 1998)). However, *Webb's* and *Phillips* are inapposite, as neither concerned a state's custody of property deemed abandoned under a state statute. Rather, they involved laws under which a state claimed the interest generated on certain private funds that were required by state law to be deposited into interest-bearing accounts. *See Phillips*, 524 U.S. at 159–60; *Webb's*, 449 U.S. at 155–57. In *Webb's*, the Supreme Court held that Florida's retention of earned interest on funds retained by a state court as part of a lawsuit was a taking for Fifth Amendment purposes. 449 U.S. at 164–65. In *Phillips*, the Court held that the interest earned on certain client funds held by an attorney in connection with his practice of law that are deposited in bank accounts was private property for Fifth Amendment purposes but expressed no view as to whether Texas had unconstitutionally "taken" that interest.[5] 524 U.S. at 159–60, 172. Here, we are faced with a substantially different

---

[4] While the courts in *Simon* and *Smolow* recognized the common law rule that "interest follows the principal," neither found that the rule dictated that a state must pay interest on account of its custody of abandoned property. *See Simon*, 301 F. App'x at 111 ("[W]e are satisfied that the rule of 'interest follows the principal' was never intended to apply to every situation involving personal property held by someone other than the property owner."); *Smolow*, 959 A.2d at 302–03 ("Smolow asserts his individual claim relying on the maxim that interest follows principal, averring that, by analogy, an owner holds title to both the abandoned property and the interest earned. . . . We reject Smolow's argument because it strains common sense to suggest that the Commonwealth is obligated to pay interest to a negligent owner, who has presumably ignored his property for several years.").

[5] On remand, the Fifth Circuit held that Texas had taken this interest in violation of the Fifth Amendment. *Washington Legal Found. v. Texas Equal Access to Just. Found.*, 270 F.3d 180, 182 (5th Cir. 2001). In a later decision, the Court ruled that while a similar scheme in Washington could be a *per se* taking requiring the payment of "just compensation," it did not violate the Takings Clause because it

circumstance, where the state retains custody of private property deemed abandoned and deposits the property in its general fund. *See Rowlette*, 656 S.E.2d at 623 ("In [*Webb's*], the property was paid into court by a known entity and was due to Webb's known creditors. In the case at bar, the property at issue was unclaimed and presumed abandoned. . . . [*Phillips* and *Brown*] dealt with property that unquestionably belonged to identified owners. Here, we are dealing with property that is presumed abandoned until a holder or owner makes a claim to the Treasurer."). Under *Texaco*, this is not a Fifth Amendment Taking.

However, even if it is conceded, for sake of argument, that Defendant's custody of abandoned property under DAUPA is a taking requiring compensation, the fact that Defendant does not pay property claimants interest under the act does not violate the Takings Clause. It is important to first emphasize that owners are entitled to the return of their property or its equivalent value, as well as any income or other increments received by the Treasurer on the property while in her possession. 72 Pa. Cons. Stat. §§ 1301.15, 1301.19. Thus, owners are entitled to the return of the full value of their property. However, Plaintiff cites to the principle that, where there is a "period during which the owner has neither his land nor equivalent value in money . . . just compensation must include, in addition to fair value at the time of taking, an award for the intervening deprival." *United States v. 355.70 Acres of Land,* 327 F.2d 630, 632 (3d Cir. 1964) (*see* Opp. at 10, 15 n.4). However, the context of abandoned property, where the owner cannot be reached, *see* 72 Pa. Cons. Stat. § 1301.10(a), 1301.13, 1301.2, is distinct. As the *Simon* court noted:

---

did not result in any pecuniary loss to the owner. *Brown v. Legal Found. of Washington*, 538 U.S. 216, 240–41 (2003).

> [W]e fail to see how limiting the Commonwealth when instituting a "temporary escheat" program, as opposed to a permanent escheat—which is well within the Commonwealth's powers—would further the Founders' objectives behind the Fifth Amendment. If the Commonwealth so desired, it could assume title to property deemed abandoned by statute. Indeed, certain sections of DAUPA do just that. *See* 72 P.S. § 1301.17(c) (providing for complete escheat of property when "costs associated with delivery, notice or sale exceed the value of the property"). If the Commonwealth had taken title of the abandoned property, no one could question the Commonwealth's right to also keep the interest earned on that property. In the present case, however, the people of the Commonwealth, acting through their legislature, have decided that the best course of action is for the state to take temporary custody of the abandoned property and return it, albeit without interest, to the rightful owner once that owner steps forward.

301 F. App'x at 114. If the Commonwealth were to, for example, assert eminent domain over a parcel of land for which the owner was known or readily ascertainable, it would be required to pay compensation for the time the owner was dispossessed of the property before being given compensation for the value of the land. *See 355.70 Acres of Land,* 327 F.2d at 632; *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 319 (1987) (holding that when government action amounts to a taking, "the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period"). However, where there is no owner to whom the government is able to grant compensation, as is the case with abandoned property, it does not make sense to require the government to be financially liable for this intervening period before an owner comes forward to claim his property. The government need not "compensate the owner for the consequences of his own neglect." *Texaco*, 454 U.S. at 530.

Because we uphold the constitutionality of DAUPA, we need not address the parties' arguments regarding sovereign immunity. (*See* MTD at 21–25; Opp. at 16–20.)

## IV.   CONCLUSION

For the reasons discussed, Defendant's Motion to Dismiss will be granted and Plaintiff's Complaint will be dismissed with prejudice.  An appropriate order follows.


                                 **BY THE COURT:**

                                 */s/ R. Barclay Surrick*
                                 **R. BARCLAY SURRICK, J.**